UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

 GREGORY HUBERT,

        Plaintiff,

    v.                                  1:04-CV-00516

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

      Plaintiff commenced this action seeking judicial review of a decision by the Social Security Commissioner denying disability benefits.  The Plaintiff requests that this Court reverse the decision and remand to the Administrative Law Judge to further develop the record.  The Commissioner seeks to affirm the decision.  This Court has jurisdiction to review an unfavorable decision of the Commissioner under 42 U.S.C. § 405(g).  This Court finds that the ALJ's decision is supported by substantial evidence and denies Plaintiff's request to remand the case for further consideration.

## I.    FACTS

Procedural History

      Plaintiff alleges that he became disabled on December 26, 2000 when he was no longer able to continue working due to pain and depression resulting from a motor-vehicle accident.  (R. at 65).  On February 21, 2001, Plaintiff applied for disability

insurance benefits under Title II of the Social Security Act, codified at 42 U.S.C. § 423. (R. at 65).  On August 17, 2001, the Commissioner denied Plaintiff's application.  (R. at 46).  Plaintiff then requested a hearing before an administrative law judge.  (R. at 52).

On October 1, 2002, Plaintiff appeared before Judge Joseph F. Gibbons.  (R. at 19–45).  After considering the record, Judge Gibbons found that Plaintiff was not disabled.  (R. at 8–18).  On March 11, 2004, the Appeals Council denied Plaintiff's request for review.  (R. at 3–6).  On May 10, 2004, Plaintiff filed a complaint in the United States District for the Northern District of New York pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's decision.  (Dkt. No. 1).  The Commissioner answered on August 25, 2004.  (Dkt. No. 3).

Non-Medical Evidence

Plaintiff sustained injuries to his neck and back as a result of a motor vehicle accident on July 15, 1998.  (R. at 24).  At the time of the accident, Plaintiff was 25 years old and had completed high school.  (R. at 22).  Previous work experience included employment as a dishwasher, a maintenance worker, and store manager.  (R. at 22–23).  After the accident, Plaintiff was employed as a machine operator for a fiberoptics company from June 2000 until December 2000, but quit due to significant back and leg pain (R. at 35–37,65).

At the October 2002 hearing, Plaintiff testified about the quality and functionally limiting effects of his pain.  (R. at 19–45).  Plaintiff indicated that he manages his pain by alternating positions "almost all the time."  (R. at 28).  He explained that he had to lie down for pain relief more than three times during the day.  (R. at 39).  However, Plaintiff maintained personal grooming and dressing habits, shopped for groceries, cleaned

2

house, and helped with laundry.  (R. at 31–32,28).  Plaintiff could drive short distances, and drove himself without interruption from Schenectady to Albany for the hearing. (R. at 39–40).  About a year before the hearing, Plaintiff indicated that he was taking daily walks and doing daily stretching and strengthening exercises when not hampered by pain.  (R. at 100, 104).  Plaintiff could sit for three hours on and off, alternating with standing.  (R. at 105).  Plaintiff could also stand for an hour on and off, alternating with sitting.  (R. at 105).

Plaintiff also described the symptoms of his depression.  Plaintiff expressed difficulty making decisions, particularly regarding his daughter, his medical treatment, and his future plans.  (R. at 41–42).  He confessed crying one to two times weekly when considering his condition.  (R. at 41).  During those times, thoughts of suicide would arise, but Plaintiff declared that he would never act because of his daughter.  (R. at 42).  However, Plaintiff spends time researching on the Internet.  (R. at 95).  He watches over his nine-year-old daughter during visits every other weekend and two or three times a week.  (R. at 26).  A year earlier, Plaintiff explained that he was visiting friends and relatives a couple of times a week. (R. at 100, 104).

Medical Evidence: Pain Treatment

*Diagnostic & Interventional Pain Management and Rehabilitation Services*

In 1998, as noted by Dr. Allen Carl, Plaintiff sought and received a series of treatments, including a rhizotomy, physical therapy, and chiropractic care, which provided temporary relief. (R. at 127).  From October 1998 until the time of the hearing, Plaintiff had been receiving periodic examinations from Drs. Arvinder Singh, Paul Clarke, and Adul Arain at the Diagnostic & Interventional Pain Management and

3

Rehabilitation Services Center.  Reports from the Diagnostic & Interventional Pain Management and Rehabilitation Services Center steadily indicated moderate to severe back pain.  (R. at 168–91, 251–60).  In March 2000, Dr. Singh performed a lumbar discography.  (R. at 274–75).  The procedure convinced Dr. Singh that the L5/S1 disc was a major source of pain.  (R. at 275).  Dr. Singh proscribed medication for pain, spasms, depression, and panic attacks.  (R. at 76).

*Dr. Fabien Bitan*

On June 2000, spinal specialist Dr. Fabien Bitan examined Plaintiff and indicated a limited range of motion in flexion.  (R. at 130).  In a follow-up on July 2000, Dr. Bitan noted that Plaintiff was permanently handicapped by low back pain and thus was a perfect candidate for disc replacement.  (R. at 129).  However, Dr. Bitan observed that Plaintiff was extremely active.  (R. at 129).

*Dr. Amelita Balagtas*

On March 12, 2001, an orthopedic consultative examination by the Social Security Agency's orthopedist, Dr. Amelita Balagtas, revealed that Plaintiff suffered from sharp, radiating neck pain and dull, radiating back pain.  (R. at 132).  Dr. Balagtas concluded that Plaintiff would have "some limitations in activities that require bending, lifting, prolonged sitting, and prolonged standing."  (R. at 133).  However, Plaintiff could do his own self-care, grooming, dressing, and limited driving.  (R. at 132).

*Dr. Voderbet Kamath*

Dr. Voderbet Kamath provided a neurological examination of Plaintiff on March 29, 2001.  (R. at 261).  Dr. Kamath perceived that Plaintiff was in "mild distress" from persistent neck and back pain.  (R. at 261–62).  He further found that the pain

4

worsened if Plaintiff sat or stood in any one place for any length of time.  (R. at 261).

Plaintiff could "sit for about 45 minutes or stand for up to an hour and short distance

walking is tolerated, but after about half an hour or so the pain gets worse."  (R. at 261).

*Drs. S.J. Parks and Richard Blaber*

On June 12, 2001, Dr. S.J. Parks prepared a consultative examination (CE) of

Plaintiff for the New York State Division of Disability Determinations.[1]  (R. at 164).  Dr.

Parks opined that Plaintiff was capable of sitting, standing, and walking six hours each.

(R. at 164).  On August 1, 2002, Dr. Richard Blaber provided a CE on Plaintiff's record

and likewise concluded that Plaintiff was capable of sitting, standing, and walking six

hours each, with occasional bending and stooping.[2]  (R. at 224).  Drs. Parks and Blaber

did not personally examine Plaintiff.  Dr. Blaber's conclusion rested primarily on Dr. Carl

and Dr. Bitan's notations.  (R. at 208, 232).

Medical Evidence: Psychiatric Treatment

*Dr. Jacqueline Bashkoff*

On July 25, 2000, Plaintiff began psychiatric treatment with Dr. Jacqueline

Bashkoff for symptoms of depression connected with his pain and inability to find work.

(R. at 278–79).  In August and September 2000, Dr. Bashkoff noted that Plaintiff was

---

[1] Through CEs, the Division provides RFC determinations of applicants to the Social Security Administration's Disability Insurance program.  The Administration requests CEs if an applicant's medical records are not sufficient to enable the Administration to determine RFC.

[2] The record contains a third CE that comes to the same conclusions as Drs. Parks and Blaber.  (R. at 226).  However, because the signature is illegible, and because the ALJ, Plaintiff, and Defendants do not mention this CE, this Court will not consider this CE as part of the record.

depressed and had trouble sleeping as a result of his pain.  (R. at 279).  Plaintiff next saw Dr. Bashkoff in January 2001, when he reported anxiety over his financial and marital state.  (R. at 280).

In March 2001, Plaintiff first indicated suicidal thoughts, which continued throughout 2001. (R. at 283–88).  In May 2001, Dr. Bashkoff remarked that Plaintiff was unable to care for himself  (R. at 284) but noted also that Plaintiff was walking and reading (R. at 285).  Throughout treatment, Plaintiff steadily expressed anxiety over his financial and personal state.  (R. at 280–88).

*Dr. John Seltenreich*

On March 12, 2001, Dr. John Seltenreich performed a CE of Plaintiff.  (R. at 138).  After personally examining Plaintiff, Dr. Seltenreich diagnosed Plaintiff with major depression and panic disorder.  (R. at 140).  He reported Plaintiff's feelings of hopelessness, concentration problems, and anhedonia.[3]  (R. at 138).  He also indicated that Plaintiff had panic attacks, with the last attack occurring a week earlier.  (R. at 138).  The frequency of Plaintiff's attacks varied and Plaintiff claimed that BuSpar, a prescription medicine, was helpful.  (R. at 138).  Dr. Seltenreich further observed that Plaintiff was able to function appropriately in society.  (R. at 139–40).  Plaintiff dressed, bathed, and groomed himself; helped with cleaning, laundry, and shopping; managed

---

[3]  The Code of Federal Regulations defines "anhedonia" as "a pervasive loss of interest in almost all activities."  20 C.F.R. Part 404, Subpart P, App'x 1, § 12.04(A)(1)(a).

his finances; socialized with a friend and family; passed time researching on the Internet; and drove a car.  (R. at 139–40).  Likewise, Plaintiff was able to follow and understand simple directions; maintain concentration for tasks; make appropriate independent judgments; and perform simple rote tasks if physically capable.  (R. at 140).

*Dr. Weiss*

On May 3, 2001, and again on July 2001, Dr. Weiss, a non-examining State agency physician, reviewed Plaintiff's records.  (R. at 144–60, 210–23).  Dr. Weiss affirmed Plaintiff's diagnosis of major depression.  (R. at 144).  However, Dr. Weiss determined that Plaintiff has sufficient understanding and memory for employment purposes.  (R. at 155).  Plaintiff also was not significantly limited in concentration, including the ability to make simple work-related decisions.  (R. at 155).  Plaintiff could read, research on the Internet, drive, and handle bills when not physically hampered. (R. at 157).  Dr. Weiss concluded that Plaintiff was able to understand and remember simple instructions, was able to adapt, and was able to interact appropriately with others.  Id.

## II.  STANDARD OF REVIEW

A court examining a denial of disability benefits must undertake a two-step review.  First, a court must determine whether the administrative law judge applied the correct legal standards.  Rosado v. Sullivan, 805 F. Supp. 147 (S.D.N.Y. 1992)(*citing* Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).  Second, a court must decide whether the ALJ's findings of fact are supported by substantial evidence.  42 U.S.C. §

405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).

The substantial evidence standard presents a low threshold.  Substantial evidence is evidence that a reasonable person would find adequate to support a conclusion.  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)(*citing* Richardson v. Perales, 402 U.S. 389, 401 (1971)).  There need not be a preponderance of evidence.  Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).  A reviewing court may find substantial support although there is contradictory evidence permitting conflicting inferences.  Snell v.Apfel, 177 F.3d 128, 132 (2d Cir. 1999)(*citing* Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)).  Indeed, under this standard, the same body of evidence may adequately support contradictory findings.  Schauer, 675 F.2d at 57.  A reviewing court may not examine the evidence *de novo* or substitute its own interpretation for that of the ALJ.  Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

The opinion of a treating physician is entitled to controlling weight if the opinion is supported by objective medical findings and not contradicted by substantial evidence in the record.  20 C.F.R. § 1527(d)(2); Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983).  However, the evaluations of non-examining State agency medical and psychological consultants may constitute substantial evidence.  See Schisler v.Sullivan, 3 F.3d 563, 568 (2d Cir. 1993)(holding that opinions of non-examining physicians are substantial evidence if they are in turn supported by evidence in the record).  An ALJ must treat such evaluations as expert opinion evidence of non-examining sources.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *1; 20

8

CFR 404.1527(f).  Such treatment extends to such consultants' RFC assessments.
SSR 96-6p, at *4.  State agency consultants are experts in evaluating the medical
issues of disability claims.  Id. at *2.  However, because such consultants do not have a
treating relationship with the claimant, and because they might be unduly influenced by
institutional demands, the ALJ gives their opinions weight only insofar as the record
supports.  Id. at *3.

A reviewing court must determine whether the administrative law judge correctly
weighed the credibility of the plaintiff's testimony about symptoms.  King v. Sec'y of
Health, Ed., and Welfare, 481 F. Supp. 947, 948 (D.C. Pa. 1979).  An ALJ evaluating
an individual's credibility must do a two-step analysis.  First, the ALJ must consider
whether there exists a medically-determinable physical or mental impairment that could
reasonably be expected to produce the individual's pain or other symptoms.  SSR 96-
7p, 1996 WL 374186, at *2; 20 CFR § 404.1529(b); Crouch v. Comm'r, 2003 WL
22145644, at *10 (N.D.N.Y. Sept. 11, 2003).  If so, the ALJ must then assess the
intensity, persistence, and limiting effects of the symptoms to determine the extent to
which the symptoms limit the individual's ability to do basic work activities.  SSR 97-7p,
at *2.

If the individual's testimony about symptoms is not substantiated by objective
medical evidence, the ALJ must make a finding about an individual's credibility based
on the entire record.  Id.; see also 20 C.F.R. 404.1529(c)(4).  An individual's daily
activities, and the ALJ's own observations of demeanor, may constitute other evidence.
20 C.F.R. 404.1529(c)(3); Rosado v. Shalala, 868 F. Supp. 471, 473 (E.D.N.Y. 1994).

9

However, to the extent that a reasonable person would find that a plaintiff's alleged limitations are consistent with the objective medical evidence and other evidence in the record, an administrative law judge will determine that these limitations diminish the plaintiff's capacity for basic work activities.  SSR 96-7p, at *2; Tavarez v. Barnhart, 124 F. App'x 48 (2d Cir. 2005); Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997), aff'd, 152 F.3d 920 (2d Cir. 1998).

## III. DISCUSSION

A.  Governing Law

A court may grant disability insurance benefits only if an individual meets insured status criteria.  42 U.S.C. § 423(a).  Moreover, an individual must be "disabled."  Id. at § 423(A)(1)(E).  Under the Social Security Act, an individual is disabled if he or she is unable to engage in "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. at 423(d)(1)(A).

To determine whether an individual is disabled under the Act, the Commissioner undertakes a five-step analysis.  First, the Commissioner decides whether the applicant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  If not, the Commissioner considers whether the applicant has a "severe" impairment that significantly limits his or her ability to do "basic work activities."  Id. at § 404.1520(a)(4)(ii), 404.1520(c).  If the applicant alleges more than one impairment, the Commissioner must individually evaluate each impairment for severity.  See id. at §

404.1520(a)(4).  However, an ALJ's failure to make specific findings as to each impairment is harmless error if the record clearly reflects that the ALJ has considered each impairment before deciding that the applicant's condition is not severe.  See Smith v. Sullivan, 726 F. Supp. 261 (D. Neb. 1989).

Third, if the Commissioner finds that an individual's impairment or combined impairments are severe, the Commissioner next determines whether these limitations meet or equal impairments listed in Appendix 1 of the Regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If an impairment meets or equals one of the listings, the Commissioner considers the applicant to be disabled.  Id.  If not, the Commissioner then considers the applicant's residual functional capacity ("RFC")[4] and whether he or she can still do past relevant work.  Id. at § 404.1520(a)(4)(iv).

In determining an individual's residual functional capacity, the Commissioner must consider objective medical evidence, including medical facts, diagnoses, and opinions.  Id. at § 404.1545(a)(3).  A decision must also account for the applicant's testimony, including an individual's description of his symptoms such as pain.  Id.; see also Charlebois v. Comm'r, No. 02 Civ. 686, 2003 WL 22161591, at *8 (N.D.N.Y. Sept. 12, 2003).  The Commissioner must offer substantial evidence of every physical

─────────────────────

[4]  The Act defines "residual functional capacity" as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).  The Commissioner particularly focuses on whether the individual meets physical exertional requirements of sedentary, light, medium, heavy, or very heavy work.  20 C.F.R. § 404.1567.

demand listed in the regulations to demonstrate that an individual can perform the full range of work at a particular physical level.  See Charlebois, 2003 WL 22161591, at *8; LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990).

To find a residual functional capacity for sedentary work, the Commissioner must find that a individual is able to lift at least ten pounds at a time, carrying articles like files, ledgers, and small tools.  20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, at *3.  An individual must be able to sit for at least six hours, with only routine breaks. SSR 96-9p, at *6.  A morning break, a lunch period, and an afternoon break at approximately two-hour intervals constitute routine breaks.  Id.; see also Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)(noting that sedentary work does not require an individual to remain motionless for six hours).  An individual must also be able to walk and stand for up to two hours.  SSR 96-9p, at *6.

The applicant bears the initial burden of proving that he or she is disabled within the meaning of the Social Security Act.  42 U.S.C. § 423(d)(5)(A); Reyes v. Sec'y of Health and Human Servs., 807 F. Supp. 293, 298 (S.D.N.Y. 1992).  The applicant carries this burden by proving the first four steps of the analysis.  Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983).  Once an individual has proved that an impairment prevents him or her from returning to previous work, the burden shifts to the Commissioner to prove that there exists other work in the national economy to which the applicant can adjust despite his or her limitations.  20 CFR § 404.1520(a)(4)(v); see Rivera, 717 F.2d at 722–23; Reyes, 807 F. Supp. at 298.  Such work must exist in significant numbers in the national economy.  20 CFR § 404.1560(c).  To determine

12

whether other work exists to which a individual can adjust, the Commissioner considers an individual's RFC together with the individual's age, education, or work experience. Id. at § 404.1560(b)(3).  If an individual is not capable of adjusting to other work, the individual is disabled.  Id. at § 404.1520(a)(4)(v).  Likewise, if an individual is capable of adjusting to other work, such individual is not disabled.  Id.

To prove that other work is available, the Commissioner may, under appropriate circumstances, rely on the Medical-Vocational Guidelines included in Appendix 2 of Subpart P of section 404.  Grey v. Chater, 903 F. Supp. 293, 297–98 (N.D.N.Y. 1995). The Guidelines account for the applicant's residual functional capacity, age, education, and work experience.[5]  Comparing these factors, the Guidelines indicate whether substantial gainful work exists to which the applicant can adjust.

The Guidelines are generally dispositive on the disability decision.  Grey, 903 F. Supp. at 298.  If the Guideline factors accurately describe an applicant's mental and physical condition, the Commission may rely exclusively upon these factors.  Id.  The Guidelines accurately describe an applicant's condition if substantial evidence supports the Commissioner's finding that the applicant can fully perform the exertional requirements of the work.  See id. at 299–302 (ordering remand because evidence did not support that the applicant could stand for two hours of a workday); see also Nelson

_____

[5] The Guidelines classify work by five different categories—sedentary, light, medium, heavy, and very heavy—based upon the physical exertional requirements of that work.  20 C.F.R. Part 404, Subpart P, App'x 2.  The Commissioner will place an individual into one of these categories based on his or her residual functional capacity. Id. § 200.00(a).  The Commissioner then considers the applicant's age, education, and previous work experience to determine whether he or she is disabled.  Id.

v. Bowen, 882 F.2d 45, 49 (2d Cir. 1989).  If not, the Commissioner must call a vocational expert to testify whether other work exists that the applicant can perform within his limitations.  See Nelson, 882 F.2d at 45.

B. Plaintiff's Arguments

        Plaintiff argues that this Court should reverse the Commissioner's decision and remand to the Commissioner due to legal errors and insufficient evidence.  (Br. on Behalf of Plaintiff 9).  Plaintiff contends that (i) the Commissioner failed to make a finding whether Plaintiff's mental impairments met or equaled the level of severity of impairments listed in Appendix 1 of the Regulations, (ii) the Commissioner failed to properly evaluate Plaintiff's credibility, (iii) the Commissioner's decision concerning Plaintiff's residual functional capacity is not supported by substantial evidence, and (iv) the Commissioner failed to meet her burden of proof that other work exists in the national economy.  Id. at i.

C.  Analysis

1.  Whether the Commissioner Erred in Finding that the Plaintiff's Mental Impairments did not Meet or Equal the Level of Severity of Any of the Impairments Listed in Appendix 1 of the Regulations.

        Plaintiff maintains that the Commissioner failed to make a finding whether Plaintiff's mental impairments met or equaled the impairments listed in Appendix 1 of the Regulations.  (Pl's Brief 9).  Specifically, Plaintiff contends that the ALJ failed to make a finding whether Plaintiff's depression was a per se impairment under section 12.04 of Appendix 1.  Id. at 10.  In addition, Plaintiff maintains that the ALJ failed to make a finding whether Plaintiff's anxiety and panic disorders were severe impairments

14

and whether they constituted per se disabilities under section 12.06.  <u>Id.</u>

Section 12.04 of Appendix 1 describes the circumstances under which depressive syndrome constitutes per se disability.  20 C.F.R. Part 404, Subpart P, § 12.04.  To meet or equal the level of per se disability, depression must create the conditions listed in both 12.04A and 12.04B, or 12.04C alone.  To meet the combined criteria of 12.04A and 12.04B, depression must result in two of the following: (i) a marked restriction of activities of daily living ("ADLs");[6] (ii) marked difficulties in maintaining social functioning; (iii) marked difficulties in maintaining concentration, persistence, or pace in a work-like setting; or (iv) repeated episodes of decompensation,[7] each of extended duration.  <u>Id.</u> at § 12.04A, B.  A "marked" limitation is a "moderate but less than extreme" impairment.  <u>Id.</u> at § 12.00A.  Alternatively, to meet the criteria of 12.04C, an individual's depression must last at least two years and create repeated episodes of decompensation, an inability to function outside a highly supportive living arrangement, or a "residual disease process [such that] even a minimal increase in mental demands . . . would . . .cause plaintiff to decompensate."  § 12.04C.

Similarly, section 12.06 of Appendix 1 sets forth the conditions under which the

------

[6] Activities of daily living include cleaning, shopping, paying bills, maintaining a residence, and keeping up dressing, grooming, and hygiene.  § 12.00(C)(1).  The Commissioner consider the extent to which an individual can perform ADLs independently, appropriately, effectively, and continuously.  <u>Id.</u>

[7] Decompensation refers to a worsening of symptoms.  20 C.F.R. Pt. 220, App'x.

Commissioner must find that an anxiety-related disorder renders a plaintiff per se

disabled.  20 C.F.R. Part 404, Subpart P, § 12.06.  An anxiety-related disorder results in

per se disability only if the disorder (i) markedly restricts an individual's ability to

socialize, concentrate, or do daily activities, or results in extended episodes of

decompensation, or (ii) creates a "complete inability to function independently outside

the area of one's home." § 12.06B, C.

The ALJ found that Plaintiff's mental impairments did not render Plaintiff per se

disabled under Appendix 1.  (R. at 12).  The ALJ did not distinguish between depressive

syndrome or anxiety disorder.  This Court finds that the Administrative Law Judge's

finding is supported by substantial evidence.  See 42 U.S.C. § 405(g); Rivera, 923 F.2d

at 976.  The record does not indicate that Plaintiff suffered a "marked" limitation in daily

living, social functioning, or concentration, persistence, or pace.  See § 12.04B; §

12.00A.  Plaintiff testified that he maintained a residence, did some housecleaning on a

good day, routinely helped with laundry, and independently maintained personal

grooming.  (R. at 27, 28, 32).  Dr. Seltenreich also observed Plaintiff's capacities for

daily activities and indicated further that Plaintiff independently managed his finances

and researched on the Internet.  (R. at 139–40).  Dr. Weiss similarly found that

Plaintiff's depression and panic disorder did not limit Plaintiff's activities even

moderately.  (R. at 157); see § 12.00A.

Plaintiff's capacity to interact appropriately with others is also supported by

ample evidence.  Plaintiff testified that his nine-year-old daughter visits every other

weekend and two or three times a week.  (R. at 26).  In 2001, Plaintiff was visiting

16

friends and relatives a couple of times a week.  (R. at 100, 104).  Dr. Seltenreich

believed that Plaintiff could function appropriately in society and Dr. Weiss agreed.  (R.

at 139–40, 157).

The ALJ's finding that Plaintiff had sufficient concentration and short-term

memory to perform in a simple work environment also has substantial support.  Dr.

Seltenreich noted that Plaintiff was able to follow and understand basic directions,

maintain concentration for rote tasks, and make appropriate independent judgments.

(R. at 140).   Dr. Weiss concluded that Plaintiff was not significantly limited in

concentration, and was able to understand and remember uncomplicated instructions.

(R. at 157).

Dr. Bashkoff's submissions are consistent with this Court's conclusion that the

ALJ's finding concerning per se disability is substantially supported.  Dr. Bashkoff

observed in May and July 2001 that Plaintiff was unable to care for himself (R. at 284)

and do household ADLs (R. at 194, 197).  Plaintiff also suffered from poor

concentration, insight, and independent planning.  (R. at 194, 197).  Plaintiff lacked

social support. (R. at 198).  However, Dr. Bashkoff made clear that Plaintiff's ability to

do basic living activities, socialize, concentrate, and make adequate judgments varied

with Plaintiff's pain level.  (R. at 197–98).  Considering Plaintiff's own testimony about

his pain and Dr. Seltenreich's observations about ADL capacity, Plaintiff's pain did not

moderately impair Plaintiff's daily living, social functioning, and concentration.  See §

12.00(A).  Moreover, to the extent that Dr. Bashkoff's opinion contradicts evidence from

Dr. Seltenreich, Dr. Weiss, and Plaintiff himself, the ALJ was not required to give Dr.

Bashkoff's opinion controlling weight.  See 20 C.F.R. § 1527(d)(2); Carroll, 705 F.2d at 642.

Plaintiff also argues that the ALJ failed to make any specific findings regarding Plaintiff's anxiety and panic disorders.  (Pl's Br. 10).  Plaintiff notes that he was diagnosed with panic attacks, excessive worry, and anxiety.  Id.  Thus, Plaintiff contends that the ALJ should have determined whether Plaintiff's anxiety disorder was a severe impairment and whether it met or equaled the level of severity of Listing 12.06. Id.

Although the ALJ did not make specific findings regarding Plaintiff's alleged anxiety disorders, the ALJ found that Plaintiff's mental impairments, as a whole, did not rise to the level of per se disability.  (R. at 12).  This finding is supported by substantial evidence.  Evidence from Dr. Seltenreich, Dr. Weiss, and Plaintiff concerning Plaintiff's daily living, social functioning, and concentration in a work environment supports the conclusion that Plaintiff's anxiety did not cause marked difficulties in these tasks.  See 20 C.F.R. § 12.06B.   Likewise, these observations indicate that Plaintiff was able to function independently outside of his home.  See id. § 12.06C.[8]  Thus, the ALJ's decision that Plaintiff's panic disorder did not render Plaintiff per se disabled rests on a substantial foundation.

---

[8] This evidence also indicates that Plaintiff did not suffer repeated decompensation, was not vulnerable to decompensation following minimal increases in mental demands, and was able to function outside a highly supportive living arrangement.  See 20 C.F.R. § 12.06C.

*2. Whether the Commissioner Failed to Properly Evaluate Plaintiff's Credibility*
*Regarding Testimony of Daily Physical and Mental Limitations Due to Back Pain,*
*Depression, and Anxiety.*

Plaintiff next argues that the ALJ failed to apply the correct legal standard when
assessing Plaintiff's credibility.  (Pl's Br. 11).  Plaintiff maintains that the record
demonstrates that his medically-determinable discogenic disease and depression could
reasonably be expected to produce the symptoms about which he testified.  Id.  At
medical examinations and at the hearing, Plaintiff indicated that he cannot tolerably sit
for more than three hours alternating with standing.  (R. at 105).  Plaintiff must also
change positions frequently due to back and leg pain (R. at 28, 38) and must lie down
more than three times during the day (R. at 39).  Plaintiff maintains that his subjective
complaints are reasonably consistent with all objective medical evidence and other
evidence.  (Pl's Brief 11).  Moreover, Plaintiff has complied with all recommended
treatment and has an admirable work history.  Id. at 12.  Thus, Plaintiff reasons, the
ALJ erroneously failed to fully credit his claim that he cannot work in any capacity
because of pain.  Id.

In determining that Plaintiff's claim of total disability was not fully credible, the
ALJ applied the correct legal standard.  The ALJ articulated that, in determining RFC,
he was bound to "consider all symptoms, including pain, and the extent to which these
symptoms can reasonably be accepted as consistent with the objective medical
evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529, and
Social Security Ruling 96-7p."  (R. at 13).  The ALJ noted that "medical evidence
indicates that the plaintiff has musculoskeletal and mental impairments" (12, 17), and

suggested that these impairments could reasonably be expected to produce the pain and other symptoms about which Plaintiff testified (R. at 15, noting that the Judge "does not doubt that plaintiff has limitations.")  <u>See</u> SSR 96-7p.

Plaintiff next maintains that the ALJ failed to properly assess his claims about how the intensity, persistence, and nature of his pain limited his capacity to do basic work activities.  (Pl's Br. at 11, *citing* SSR 96-7p).  Plaintiff declares that he is unable to think clearly and make decisions due to pain, depression, and medication. (Pl's Br. 11). He expresses that he cannot sit for more than three hours alternating with standing, that he must frequently shift positions, and that he must lie down to relieve pain.  (R. at 105, Pl's Br. 11, 12).  Plaintiff does not fault the ALJ for incorrectly evaluating his specific allegations regarding the quality and consequences of his condition, but rather argues that the ALJ improperly weighed his general claim of total disability.  (Br. at 12).

The ALJ properly assessed Plaintiff's pain and mental distress to determine the extent to which these symptoms limited Plaintiff's ability to do basic work activities. Because the specific details Plaintiff provides about the day-to-day effects of his pain are not found elsewhere in the body of medical evidence, the ALJ properly examined the entire record before discounting Plaintiff's claim of total incapacity.  <u>See</u> SSR 96-7p, at *2.  The ALJ noted Plaintiff's ability to drive, shop, do laundry, manage his finances, and research on the Internet (R. at 15), and pointed out that these activities were confirmed by Dr. Seltenreich (R. at 139).

Moreover, Plaintiff's testimony about how pain, depression, and anxiety affect his

basic work capacities, even if reasonably consistent with the entire record, do not demonstrate total disability.  See 96-7p, at *2.  The ALJ's decision to this effect rests on a substantial foundation.  See 42 U.S.C. § 405(g).  Plaintiff admitted that he shopped for groceries and researched on the Internet, activities that require simple decision-making.  Drs. Seltenreich and Weiss both observed that Plaintiff could understand simple directions, maintain concentration for simple rote tasks, and make appropriate independent judgments.  (R. at 140, 155).  Likewise, the ALJ's finding concerning Plaintiff's physical limitations is bolstered by Plaintiff's testimony about daily activities, the RFC opinions of Drs. Parks and Blaber, (R. at 164, 224), and the ALJ's own observations of Plaintiff's demeanor.  See Rosado, 868 F. Supp.. at 473.

*3.  Whether the ALJ's Finding that Plaintiff Retains the Residual Functional Capacity to Perform Sedentary Work is Supported by Substantial Evidence in the Record.*

Plaintiff next claims that the ALJ's finding that Plaintiff retained the residual functional capacity to perform the full range of tasks at the sedentary exertional level is not supported by substantial evidence.  (Pl's Br. 13).  In particular, Plaintiff maintains that the record demonstrates that Plaintiff is unable to sit for up to six hours, and stand or walk for up to two hours, with only routine breaks.  Id.  Indeed, the argument goes, the record does not contradict Dr. Balagtas's finding that Plaintiff has "some limitations in. . . prolonged sitting, and prolonged standing."  Id.  Moreover, there is no specific RFC assessment provided by Plaintiff's treating physicians.  Id.

The ALJ's finding of full RFC capacity is supported by substantial evidence.  The record contains evidence that a reasonable person would find adequate to support this

finding.  See Williams, 859 F.2d at 258.  Dr. Parks and Dr. Blaber both provided specific RFC assessments.  (R. at 164, 224, 226–33).  These assessments found that Plaintiff was able to sit for up to six hours with routine breaks, and stand or walk for up to two hours.  See id.  No state agency physician personally examined the Plaintiff.  However, the ALJ correctly treated their assessments as expert opinion evidence because these physicians rested their conclusions on findings by examining sources Drs. Carl, Bitan, and Balagtas.  (R. at 208, 232); see 96-6p, at *3.

Evidence from Drs. Carl (R. at 124–27) and Bitan (R. at 129–30) is vague and Dr. Balagtas's broad conclusion that Plaintiff will have "some limitations in . . . prolonged standing, and prolonged sitting" (R. at 133) does not provide much weight one way or the other.  Further evidence from Dr. Balagtas, however, provides a fuller picture.  Dr. Balagtas noted a lack of muscle atrophy, sensory abnormality, or spasm, findings that Dr. Kamath corroborated.  (R. at 133, 262).  Dr. Balagtas further discerned that strength in Plaintiff's lower extremities was five out of five bilaterally.  (R. at 133).  Lack of muscle atrophy and retained muscular strength suggests that Plaintiff uses his muscles in regular activity.  This evidence does not unshakably bolster the state agency RFC assessments.  However, such evidence offers sufficient support for these assessments to justify the ALJ's reliance.  SSR 96-6p, at *2, *3.

Moreover, the ALJ was not solely depending on the state agency's RFC evaluations, but was instead also considering other evidence in the record.  Plaintiff indicated on July 2, 2001 that he could sit "on and off" for three hours alternating with standing, and could stand for an hour on and off alternating with sitting.  (R. at 105).

22

Moreover, Plaintiff, Dr. Balagtas, Dr. Seltenreich, and Dr. Weiss all indicated that Plaintiff was able to grocery-shop, do laundry, clean house, drive, and visit friends and relatives.  (R. at 132, 139–40, 236, 31–32, 28, 95, 94, 95).

As Plaintiff points out, the record does contain evidence casting doubt on Plaintiff's ability to perform the full range of sedentary work.  Plaintiff testified that he has to lie down repeatedly as needed throughout the day for pain relief.  (R. at 39). Plaintiff's need to alternate positions often to avoid intolerable pain is well-documented by treating physicians Drs. Clarke, Singh, Arain, (R. at 168–191, 251–260), and consultative experts Drs. Balagtas and Kamath (R. at 132, 126).  However, the RFC assessments and other evidence reasonably justify the ALJ's RFC finding.  See Williams, 859 F.2d at 258.

*4.  Whether the Commissioner Failed to Prove that Other Work Remained that Plaintiff could Perform.*

Plaintiff next argues that the Commissioner erred in finding that the Plaintiff retained the residual functional capacity to carry out other work available in significant numbers in the national economy.  (Pl's Br. 14–15).  Plaintiff asserts that his restricted mobility precludes him from substantially performing the full range of sedentary work and erodes the occupational base of work available to him.  Id.  Therefore, the argument goes, the Commissioner could not rely on the Medical-Vocational Guidelines to demonstrate that sedentary work opportunities that Plaintiff could realistically pursue were available.   Id.  Instead, Plaintiff maintains that the Commissioner was required to provide a vocational expert to prove the existence of work that Plaintiff could perform

despite his limitations.  Id.

As demonstrated, the ALJ's finding that Plaintiff can perform the full range of sedentary work is supported by substantial evidence.  Because Plaintiff can fully carry out the physical requirements of sedentary work, the Guidelines accurately describe Plaintiff's condition.  Consequently, the Commissioner was not obliged to call upon vocational resources but could instead rely exclusively upon the Guidelines to demonstrate the availability of other work.  See Grey, 903 F. Supp.. at 298.

## IV.  CONCLUSION

This Court AFFIRMS the final decision of the Commission of Social Security and DENIES the Plaintiff's request to remand the case for further reconsideration.

IT IS SO ORDERED.

Dated: August 23, 2007

Thomas J. McAvoy
Senior, U.S. District Judge